# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

JIMMEY LEE LAMBERT,

    Petitioner,

v.                                             Case No. 2:21-cv-00260

DONALD AMES, Superintendent,
Mount Olive Correctional Complex,

    Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (ECF No. 1) and Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus (ECF No. 12). This matter is assigned to the Honorable Irene C. Berger, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

    *I.*     *RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

Petitioner is a state prisoner who is incarcerated at the Mount Olive Correctional Complex ("MOCC"), in Mount Olive, West Virginia, serving a sentence of one to fifteen years for delivery of a controlled substance (cocaine). *State v. Lambert*, CC-14-2016-F-37 (Hampshire Cnty. Cir. Ct. Sept. 6, 2016). (ECF No. 12, Ex. 1). On April 21, 2021, Petitioner filed the instant habeas corpus petition under 28 U.S.C. § 2241 (ECF No. 1) making both "as-applied" and "facial" challenges to the constitutionality of West Virginia Division of Corrections and Rehabilitation ("WVDCR") and MOCC policies and

procedures concerning administrative segregation ("ad seg") and the required completion of a "stratified, incentive-based behavior modification program" (called the "Quality of Life" or "QOL" program), which Petitioner contends denies him meaningful periodic review and permits indefinite placement in segregation. (ECF No. 1 at 10). The petition also asserts potential Fourteenth Amendment equal protection and Eighth Amendment cruel and unusual punishment claims grounded in the QOL program requirements and the conditions of confinement on ad seg. As will be addressed further *infra*, Petitioner seeks a declaration that MOCC Operational Procedure 324 is unconstitutional, an order banning its use, strict enforcement of WVDCR Policy Directive 326.01, and his release from ad seg. (*Id*. at 10, 21).

   A.     **Policies and procedures concerning ad seg and QOL program.**

As noted by Respondent, MOCC is West Virginia's maximum-security prison, providing for the custody, control, and care of over 1,000 male prisoners. (ECF No. 13 at 4). It is designated by the WVDCR to house inmates sentenced to long terms of imprisonment, as well as inmates who have medical, mental health, or other special needs. (*Id*.). MOCC has six general population units, and two segregation units attached to the main administrative building, which house inmates undergoing intake, those in pre-hearing detention, and various forms of segregated confinement (punitive segregation, administrative segregation, and special management). (*Id*.)

WVDCR Policy Directive 326.01 governs assignment to ad seg. (ECF No. 12, Ex. 2). According to Respondent, under this directive, an inmate is notified in writing that he is being considered for placement in ad seg and the basis for this designation. The directive requires a hearing in front of the Administrative Segregation Committee ("ASC"), within 48-72 hours, which the inmate may attend. At this hearing, the

information being considered by the Committee is presented (and confidential information may be presented outside the presence of the inmate) and then the inmate is given the opportunity to present information as to why he should not be placed in administrative segregation. The ASC makes a recommendation concerning placement to the Superintendent, who makes the final decision as to whether the inmate should be placed in administrative segregation. Thereafter, the inmate may appeal the decision to the Commissioner of the WVDCR. (*Id.*)

An inmate who is placed in ad seg at MOCC is also assigned to the QOL program in accordance with MOCC Operational Procedure 324 ("O.P. 324") and must successfully complete the program before he can be returned to the general inmate population. (ECF No. 12, Ex. 3). The QOL program has four stratified levels of increasing privileges within the segregation unit. An inmate may move up or down in level depending upon his demonstration of appropriate inmate behavior and program compliance. Respondent asserts that O.P. 324 unambiguously explains that specified forms of misbehavior will cause an inmate not to advance or to fall back to a lower level in the QOL program, which takes a minimum of 340 days to complete. While the operational procedures appear to provide for regular reviews of the inmate's compliance and behavior, it is unclear whether those reviews are conducted with the inmate or simply by the committee or other staff without the inmate's presence. (*Id.*)

According to O.P. 324, inmates new to ad seg or those who have displayed inappropriate behaviors at higher levels, are assigned to Level One, which lasts a minimum of thirty days and requires an inmate have appropriate behavior and sanitation/hygiene for a minimum of thirty days before being considered for advancement to Level Two. Specific conditions in the QOL program are set forth in OP

3

324 at pg. 3. At Level One, inmates will not have a television or participate in programs, and will have the fewest privileges. (*Id.*) At Level Two, inmates begin participation in recommended educational programming and have increased privileges. (*Id.* at pg. 4). Level Two lasts a minimum of seventy days and an inmate, in addition to demonstrating appropriate behavior and sanitation/hygiene, must also have completed the assigned programming before he can be assigned to Level Three. (*Id.*) At Level Three, inmates have increased privileges and may be assigned to non-paying work assignments. (*Id.* at pg. 5).

Level Three lasts a minimum of one-hundred twenty days and an inmate, in addition to showing appropriate behavior and sanitation/hygiene, must also complete the assigned programming for the Level and not have been convicted of any Class I disciplinary violation in the last six months or convicted of any Class II disciplinary violation in the last three months before he can be assigned to Level Four. (*Id.* at pg. 6). At Level Four, an inmate has increased privileges and is evaluated for potential for successful adjustment and readiness for placement in General Population. (*Id.* at pg. 7). Level Four lasts a minimum of one-hundred twenty days and an inmate must demonstrate successful participation in the Progressive Reintegration Opportunity Unit programs and successful behavior control and programs completion. (*Id.*) Upon successful completion of Level Four programing, the Progressive Reintegration Opportunity Committee then interviews the inmate and reviews his record to determine whether he should be advanced to General Population. (*Id.*)

      **B.    Petitioner's placement in ad seg and his claims for relief.**

According to Respondent, Petitioner's involvement in an inmate assault at Central Regional Jail resulted in a disciplinary write up, leading to a term of punitive segregation,

4

followed by his placement in ad seg at MOCC in accordance with P.D. 326.01. Specifically, Petitioner was alleged to be a "[t]hreat to the safety and security of the facility due to fighting and assaulting (impact weapon) another inmate at Central Regional Jail on or about January 4, 2021. (ECF No. 12, Ex. 4). As a result of this misconduct, Petitioner was issued a written Notice of Assignment to Detention Custody at MOCC on or about February 2, 2021. (*Id.*, Ex. 5). Petitioner remained in detention status until he appeared before the ASC for a hearing on February 5, 2021, where it was determined that his status would be changed from detention to ad seg. (*Id.*, Ex. 6). Pursuant to O.P. 324, Petitioner was required to complete the QOL program.

Petitioner started at Level One of the QOL program. Pursuant to a QOL Review on or about March 8, 2021, it was recommended that he be increased to Level 2 of the program effective March 7, 2021. (*Id.*, Ex. 7). Respondent asserts that Petitioner received daily outdoor recreation time at MOCC since originally being placed in detention on or about January 8, 2021. (*Id.*, Ex. 9).

Petitioner filed the instant petition on April 21, 2021, while he was on administrative segregation. (ECF No. 1).[1] In Ground One of the petition, Petitioner asserts that O.P. 324 governing MOCC's QOL program punishes inmates without due process and allows indefinite placement without meaningful review. (*Id.* at 11-14). He also challenges the QOL program as violative of other policies at MOCC, and thus discriminates against him, violating his due process and equal protection rights. (*Id.* at 12–14). He claims that the QOL program is used as punishment and is "arbitrary, capricious[,] and in excess of Respondent Ames['s] legitimate authority." (*Id.* at 14).

---

[1] Petitioner also filed a motion for a preliminary injunction (ECF No. 3) and a motion for certification of a class action (ECF No. 4), which were denied by the court on February 7, 2022. (ECF No. 11).

In Ground Two of the petition, Petitioner argues that his Fourteenth Amendment due process rights were violated "when he was denied his right to a meaningful Periodic Review" of his ad seg status. (*Id.* at 14-16). He asserts that he received no review of his status in accordance with P.D. 326.00 or, if such review occurred, he was not present, and, thus, there was no meaningful periodic review at each level of the QOL program, contrary to prison policy and in violation of his due process rights. (*Id.*)

In Ground Three of the petition, Petitioner claims that Respondent violated his constitutional rights by placing him in ad seg without due process protections. (*Id.* at 17-18). He claims that the process did not comply with the minimum requirements in *Crain v. Bordenkircher*, 342 S.E.2d 422, 432 (W. Va. 1986), and *Wolff v. McDonnell*, 418 U.S. 539 (1974). (*Id.* at 17). He further appears to claim that he received improper notice of his movement to MOCC and placement in the most restrictive segregation unit; that information was presented to the ASC outside of his presence, denying him an opportunity to rebut or defend against that information; and that there was no "neutral or detached officer" to whom he could appeal. (*Id.* at 17-18).

Petitioner further asserts that he has a liberty interest in "avoiding commitment and confinement to ad seg because the conditions in the isolation unit certainly impose an atypical and significant hardship within the correctional context." (*Id.* at 17–18).[2]

---

[2] The Fourteenth Amendment provides in pertinent part that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. XIV, § 1. Before the court may address the merits of Petitioner's alleged due process violations, it must first determine whether Petitioner has a protected liberty interest in avoiding segregated confinement, which he argues is grounded in the atypical and significant hardship posed by the conditions of confinement in segregation at MOCC as opposed to the ordinary incidents of prison life. *See Thorpe v. Clarke*, 37 F.4th 926, 941 (4th Cir. 2022) ("In our Circuit, prisoners retain a liberty interest in avoiding confinement conditions that impose 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' provided they can first establish that interest "arise[s] from state policies or regulations.") (Other citations omitted). However, this court need not resolve that issue herein, because, as addressed *infra*, the state courts must have the first opportunity to fully address the issue. *See Saunders v. Ames,* No. 2:21-cv-00286, 2021 WL

According to Petitioner, in ad seg, he is on lockdown between 23-24 hours per day, only allowed three showers per week, and recreation is confined to a small "dog cage" approximately the size of a horse stall or parking space which lacks running water. (*Id.* at 19). He also states that he is not allowed to have a TV, radio, game console, or basic tennis shoes, is being deprived of programming available to other prisoners, and lacks access to the law library, preventing him from obtaining parole. (*Id.* at 19-20).

Petitioner further contends that "no other inmates at MOCC, in general population or any other AD SEG inmate in WV Prison System is required to take the QOL program," and they are not "subjected to the intrusive strip searches on a near daily basis" that he claims to suffer. (*Id.* at 20). He asserts that other prisoners "only can do 6 months" in ad seg, while he "is subjected to at least 13 months with NO maximum amount of time to stay confined to [ad seg]." (*Id.*). In sum, Petitioner contends that, unlike any prisoners in general population, or even segregated inmates at other West Virginia prisons, he is being subjected to essentially indefinite punitive segregation under atypical and onerous conditions and that Respondent has failed to protect his liberty interest to be free from such conditions by providing regular and meaningful reviews at each level of the QOL program. (*Id.*) Thus, he seeks release from ad seg, strict enforcement of P.D. 326.01, and a finding that O.P. 324 is unconstitutional and banned from further use. (*Id.* at 21).

**C.    Respondent's motion to dismiss petition.**

On March 1, 2022, Respondent filed the pending Motion to Dismiss Petition (ECF No. 12), with accompanying exhibits, and a Memorandum of Law in support thereof (ECF No. 13). By that time, Petitioner had completed the QOL program and was released from

---

5436518, at *8 (S.D.W. Va. Oct. 25, 2021), *report and recommendation adopted*, 2021 WL 5435197 (S.D.W. Va. Nov. 19, 2021).

7

administrative segregation on or about February 9, 2022.[3] Respondent's motion documents argue that Petitioner's claims are moot due to his release from administrative segregation; that his claims are not appropriate for resolution in habeas corpus and are more appropriate for consideration in a civil rights action under 42 U.S.C. § 1983; and that his petition does not sufficiently state a claim for due process violations under the Fourteenth Amendment. (ECF No. 13).

### D. Petitioner's response documents.

On April 1, 2022, Petitioner filed two response documents (ECF Nos. 15 and 16) in which he asserts that his petition is not moot because he was quickly placed back in administrative segregation in early March 2022. He further asserts that there were additional due process violations with respect to his second placement in administrative segregation.[4] Petitioner also repeats his assertions that O.P. 324 is unconstitutional because it is inconsistent with WVDCR P.D. 326.01 (the ad seg policy directive) and 325.00 (the policy directive governing disciplinary violations and punitive segregation) and allegedly allows indefinite placement in segregation, without meaningful review, thus, violating due process. Petitioner's response documents also reallege that the QOL program requirements, which are only applicable at MOCC, constitute punishment.

### E. Respondent's reply.

On April 8, 2022, Respondent filed a reply brief (ECF No. 18) reasserting that Petitioner's claims are moot because his second placement in administrative segregation

---

[3] The parties appear to agree that the decision to release Petitioner to general population occurred on or about January 26, 2022 but, due to Covid related lockdowns, he was not actually released until February 9, 2022.
[4] Petitioner has not moved to amend his petition to include these allegations of additional due process violations stemming from his second placement in ad seg.

8

was based upon a new incident and further asserting that those new facts do not demonstrate any violation of his constitutional rights. This matter is ripe for resolution.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Bass v. Dupont*, 324 F.3d 761, 765 (4th Cir. 2003). When considering a motion to dismiss, the court will construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *Schuerer v. Rhodes*, 416 U.S. 232, 236 (1974). Further, the Court is required to liberally construe pro se complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. DISCUSSION

### A. Petitioner's claims are not moot.

Respondent claims that, because Petitioner was released from administrative segregation to general population on or about January 27, 2022, the instant petition is now moot. Respondent's memorandum states:

9

> Because the Petitioner is no longer in the program, based upon the facts and circumstances that gave rise to his claims in this case, this matter is moot. "[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction," *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008)), which extends only to actual cases or controversies, U.S. Const. art. III, § 2. When a case or controversy ceases to exist - either due to a change in the facts or the law - "the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." *S.C. Coastal Conservation League*, 789 F.3d 475, 482. In other words, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L.Ed.2d 491 (1969); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22, 117 S. Ct. 1055, 137 L.Ed.2d 170 (1997) ("Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L.Ed.2d 479 (1980)).

(ECF No. 13 at 9). Respondent further contends that "[b]ecause Petitioner is no longer subject to the conditions that allegedly violated his constitutional rights, his claim is moot and the petition should be dismissed." (*Id.*)

Petitioner, on the other hand, contends that his claims are not moot because he was almost immediately placed back in administrative segregation and on the QOL program for the same reasons and write-ups as his earlier placement. (ECF No. 16 at 2). His response asserts that he was not actually released from administrative segregation the first time until February 9, 2022 (apparently due to Covid restrictions and lockdowns). (ECF No. 15 at 3). He further asserts that that, on or about February 26, 2022, he was the victim of another inmate assault and had to be hospitalized. (*Id.*) Then, on March 1, 2022, he received a Notice of Assignment stating that he would have another hearing to determine whether he should go back to segregation. (*Id.* at 3, 18, Ex. 7). No hearing having been held within 72 hours, and no written notice of an extension having

been received, a second Notice of Assignment was issued and served on Petitioner on March 4, 2022 and a hearing was held on March 8, 2022. (*Id.* at 4, 19, Ex. 8). The ASC recommended that Petitioner be placed back in administrative segregation. The reasons provided state "Gang affiliation and Past History is considered a threat to DCR safe and secure operation of the facility(s)." (*Id.* at 17, Ex. 6). The recommendation was upheld by the Superintendent. (*Id.* at 15, Ex. 5). Petitioner emphasizes that he did not get a write up for the February 26, 2022 incident and that the explanation for his return to segregation was essentially the same reason given a year earlier in February of 2021. (*Id.* at 7).

Respondent retorts that "Petitioner's March 8, 2022 reentry back into administrative segregation is based upon a completely new incident that occurred on February 25, 2022, subsequent to the time the Petition was even filed." (ECF No. 18 at 2). He further asserts:

> Clearly the facts have changed since Petitioner filed his Petition in April 2021 to contest the alleged due process deficiencies in the lead up to his placement in the Quality of Life program at that time. Petitioner's reentry into the program on new and diverse grounds does not cure the fact that the original issues contained in the Petition are no longer "live" and adjudication of Petitioner's claims serves no current interests.

(*Id.* at 3).

The mootness doctrine is rooted in the case-or-controversy limitation on federal judicial power contained in Article III, Section 2 of the Constitution. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021). A claim is rendered moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome[,]" such that a ruling thereon would "constitute an impermissible

advisory opinion. *Northam*, 20 F.4th at 162 (citing *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). There are, however, two narrow exceptions to mootness that are relevant here.

First, pursuant to the "voluntary cessation" exception, a civil action does not become moot when a defendant voluntarily ceases its allegedly improper behavior, but there is a reasonable chance that the behavior will resume. The Supreme Court has recognized a stringent standard for this exception: "A case might become moot if subsequent events made it <u>absolutely clear</u> that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citing *Friends of the Earth*, 528 U.S. at 189 (internal quotation marks omitted)); *see also Incumaa v. Ozmint*, 507 F.3d 281, 288 (4th Cir. 2007) (explaining that the voluntary cessation exception "does not apply where there is no reasonable expectation that the wrong will be repeated" (internal quotation marks omitted)). Thus, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Porter*, 852 F.3d at 363 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982); *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot.").

The second mootness exception applies to "wrongs capable of repetition yet evading review." *Northam*, 20 F.4th at 165. As noted in *Northam*:

> This exception applies only if "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *See Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462, 127 S. Ct. 2652, 168 L.Ed.2d 329 (2007) (internal quotation marks omitted). And we have recognized this exception to be "a narrow one, reserved for 'exceptional' circumstances." *See Int'l Bhd. of*

12

> *Teamsters, Loc. Union No. 639 v. Airgas, Inc.*, 885 F.3d 230, 237 (4th Cir. 2018) (citation omitted). As we have emphasized, the "party seeking to invoke this exception to the mootness doctrine bears the burden of showing its application." *See Williams v. Ozmint*, 716 F.3d 801, 810 (4th Cir. 2013) (citation omitted).

*Id.*

The Fourth Circuit has further recognized that, in determining whether there a "reasonable expectation" of being subject to the same action, courts cannot speculate on the likelihood that an inmate will fail to follow prison rules. *Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007) ("*Incumaa I*"). In *Incumaa I,* the Court noted that "[s]uch 'conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power' to hear cases for which there is *in fact* a *reasonable* expectation of repetition." *Id.* (quoting *Abdul–Akbar v. Watson,* 4 F.3d 195, 207 (3d Cir. 1993). Thus, there must be a "demonstrated probability" that the challenged action will happen again to the same complainant. *Id.; see also Murphy v. Hunt,* 455 U.S. 478, 483 (1982) (per curiam).

Here, the court need not speculate as to whether there is a reasonable expectation that the challenged conduct could happen again to Petitioner, as he was placed back in administrative segregation less than a month after his release. Moreover, despite Respondent's assertion that Petitioner's return to administrative segregation was based upon "a completely new incident," that fact is not apparent from the evidence before this court. Rather, the paperwork in evidence suggests that Petitioner's second placement in administrative segregation was again because his "Gang affiliation and Past History is considered a threat to the safe and secure operation of the factility[s]" and cited to the same incident from January of 2021, not any specified new conduct. Petitioner also argues that "the Committee signed to let me off to try and get around a Due Process

13

violation . . . ." (ECF No. 15 at 9). While it is a close call, out of an abundance of caution, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's claims challenging his placement and retention in administrative segregation at MOCC pursuant to P.D. 326.01 and O.P. 324 are not moot.

### B. Unavailability of relief under § 2241.

Habeas corpus is the appropriate and exclusive remedy for a state prisoner to attack the validity or duration of confinement. *Todd v. Baskerville*, 712 F.2d 70, 71 (4th Cir. 1983). However, when a challenge is made to the conditions of, rather than the fact or duration of, confinement, the appropriate remedy is under 42 U.S.C. § 1983. *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *see also Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . [while] requests for relief turning on circumstances of confinement may be presented in a § 1983 action"). Respondent's motion to dismiss asserts that Petitioner cannot pursue any of his constitutional challenges to the WVDCR and MOCC policies in a federal habeas corpus petition, but rather must seek relief, if at all, through a civil rights complaint under 42 U.S.C. § 1983, because his claims allegedly concern his conditions of confinement and not the fact or duration of his sentence. (ECF No. 13 at 10-11). However, Petitioner's petition raises due process claims concerning his placement and retention in administrative segregation, as well as claims concerning his conditions of confinement in ad seg, which must be separately considered.

Placement and retention in ad seg certainly do not affect the validity of an inmate's conviction or sentence, and often do not even impact the duration of the inmate's sentence. Consequently, such claims may either be construed as involving the execution

of the sentence, which are usually addressed through habeas corpus, or conditions of confinement, which are generally addressed in a civil rights action.

While this specific question has not been definitively answered by the Supreme Court and remains somewhat unsettled among the federal circuit courts, years ago, the United States Court of Appeals for the Fourth Circuit recognized a limited right to pursue habeas corpus relief on claims alleging "the imposition of segregated confinement without elementary procedural due process and without just cause." *McNair v. McCune,* 527 F.2d 874, 875 (4th Cir. 1975); *see also Varela v. Whalen*, 946 F.2d 888 (4th Cir. 1991) (Federal habeas corpus jurisdiction exists under 28 U.S.C. § 2241(c)(1) to review due process challenge to imposition of segregated confinement by <u>federal</u> prisoner); *Graham v. Broglin,* 922 F.2d 379, 381 (7th Cir. 1991) ("If the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, *or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation* - then *habeas corpus* is his remedy.") (emphasis added); *Streeter v. Hopper,* 618 F.2d 1178, 1181 (5th Cir. 1980) (stating claim seeking release from imposition of administrative segregation without due process is cognizable in habeas); *Hillberry v. Ballard*, No. 2:13-cv-21893, 2014 WL 7161012, at *10 (S.D.W. Va. Dec. 15, 2014).[5] Thus, the Court has recognized a narrow category of cases where due process challenges to segregated confinement may be brought in a federal

---

[5] The undersigned notes, however, that the bulk of the precedent addressing similar due process claims demonstrates that such claims were raised in civil rights complaints under § 1983. *See, e.g., Wilkinson v. Austin,* 545 U.S. 209 (2005); *Sandin v. Conner,* 515 U.S. 472 (1995); *Thorpe v. Clarke*, 37 F.4th 926, 941 (4th Cir. 2022); *Smith v. Collins*, 964 F.3d 266, 275 (4th Cir. 2020); *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015); and *Prieto v. Clarke*, 780 F.3d 245, 248-52 (4th Cir. 2015). Therefore, Petitioner likely could pursue his due process claims in a § 1983 action as well.

15

habeas corpus petition and Petitioner's due process claims concerning his placement in ad seg appear to fit that category.

Nonetheless, even if Petitioner's due process claims concerning his placement and retention in ad seg would be cognizable in habeas corpus, the Fourth Circuit has clarified that, as a sentenced state prisoner, he may not pursue such relief in a section 2241 petition. *See In re Wright*, 826 F.3d 774, 779 (4th Cir. 2016) ("regardless of how they are styled, federal habeas petitions of prisoners who are 'in custody pursuant to the judgment of a State court' should be treated as 'applications under section 2254.'") Rather, as held in *Wright*, "when a prisoner being held 'pursuant to the judgment of a State court' files a habeas petition claiming the execution of his sentence is in violation of the Constitution, laws, or treaties of the United States, the more specific § 2254 'and all associated statutory requirements' shall apply, regardless of the statutory label the prisoner chooses to give his petition." *Id.* at 783 (emphasis added).

Consequently, before he may pursue federal habeas corpus relief in this court (presuming that he has not filed a prior § 2254 petition and would, thus, require authorization from the Fourth Circuit under 28 U.S.C. § 2244(b) to file another one), Petitioner is required to first exhaust his remedies in the state courts. *See* 28 U.S.C. § 2254(b)(1)(A). "The rule of exhaustion in federal habeas corpus actions is rooted in considerations of federal-state comity." *Preiser v. Rodriguez*, 411 U.S. 475, 491, (1973); *see also Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Saunders v. Ames*, No. 2:21-cv-00286, 2021 WL 5436518, at \*5 (S.D.W. Va. Oct. 25, 2021), *report and recommendation adopted*, 2021 WL 5435197 (S.D.W. Va. Nov. 19, 2021) (dismissing § 2241 petition asserting due process challenges to administrative segregation process as unexhausted). There is no indication in the record before this court that Petitioner has even attempted

to do so. Accordingly, this court should dismiss the instant petition without prejudice to permit Petitioner to pursue his required state court remedies.

Moreover, Petitioner's allegations that the requirements and conditions of ad seg and the QOL program at MOCC serve as additional punishment and are not required to be completed by ad seg prisoners in any other state correctional facility are construed as asserting claims under the Eighth Amendment cruel and unusual punishment clause and the Fourteenth Amendment equal protection clause, those claims are not cognizable in federal habeas corpus. Rather, those claims concerning the general validity of the segregation scheme at MOCC are clearly construed as conditions of confinement claims, which must be addressed in a § 1983 action.

Accordingly, for the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's claims for relief are not cognizable in this § 2241 habeas corpus proceeding and, to the extent that his claims could be brought under § 2254, they appear to be unexhausted. Therefore, his habeas corpus petition must be dismissed.

## IV. RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion to Dismiss (ECF No. 12) and dismiss Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1), and this civil action, without prejudice.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall

have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this period may only be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party and Judge Berger.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Petitioner and to transmit a copy to counsel of record.

February 8, 2023

Dwane L. Tinsley
United States Magistrate Judge